UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Clauson & Atwood

    v.                                    Civil No. 12-cv-199-JL
                                              Opinion No. 2013 DNH 075
Professionals Direct Insurance Co.

    v.

K. William Clauson *et al.*


**MEMORANDUM ORDER**

    This is an insurance coverage dispute.  Plaintiff Clauson &
Atwood, a New Hampshire law firm, seeks a declaratory judgment
that defendant Professionals Direct Insurance Company ("PDIC"),
its professional liability insurer, must provide coverage against
a malpractice claim brought by a former client.  PDIC has
counterclaimed, seeking a declaratory judgment that it need not
provide coverage, and moved for summary judgment on both its
counterclaim and Clauson & Atwood's declaratory judgment claim.
PDIC notes that the insurance policy in question is a "claims-
made and reported" policy that provides coverage only for claims
that are both "made" and "reported" during the policy period, and
argues that the malpractice claim against Clauson & Atwood falls
outside the scope of the policy because it was "made," as defined
by the policy, well before the policy period.

This court has jurisdiction of this action under 28 U.S.C. § 1332 (diversity).  The parties declined oral argument, which this court customarily holds on dispositive motions.  After due consideration of the parties' submissions, the court grants summary judgment in PDIC's favor.  Although Clauson & Atwood has made a valiant effort to argue that the claim against it was first "made" within the policy period, its position is contrary to the unambiguous policy language defining what a "claim" is and when it is "made."

## I.   Applicable legal standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A dispute is "genuine" if it could reasonably be resolved in either party's favor at trial.  See Estrada v. Rhode Island, 594 F.3d 56, 62 (1st Cir. 2010) (citing Meuser v. Fed. Express Corp., 564 F.3d 507, 515 (1st Cir. 2009)).  A fact is "material" if it could sway the outcome under applicable law. Id. (citing Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008)).  In analyzing a summary judgment motion, the court "views all facts and draws all reasonable inferences in the light most favorable to the non-moving party." Id.

## II.   __Background__[1]

Clauson & Atwood ("C&A"[2]) is a New Hampshire law firm in which K. William Clauson is a partner.  In 2007, James Yager retained C&A and Clauson to represent him in a lawsuit arising from the unauthorized cutting of timber on his property.  C&A filed an action in New Hampshire Superior Court on Yager's behalf in December of that year, alleging that Mighty Oaks Realty, LLC was liable to Yager for common law trespass and statutory timber trespass, see N.H. Rev. Stat. Ann. § 227-J:8, for this alleged cutting.  When Mighty Oaks presented undisputed evidence that the cutting had in fact been performed by a third party, D.H. Hardwick & Sons, Inc., the Superior Court granted summary judgment in Mighty Oaks' favor in an August 2008 order.  C&A appealed the Superior Court's decision to the New Hampshire Supreme Court, which affirmed in an unpublished opinion.

In June 2008, prior to the Superior Court's grant of summary judgment in favor of Mighty Oaks, C&A filed a second Superior

_____

[1]This section briefly recounts the key facts, drawn from the parties' joint stipulated statement of material facts.  __See__ document no. 17.  The court incorporates that statement, in its entirety, by reference.

[2]Clauson & Atwood was formerly known as Clauson, Atwood & Spaneas, including during many of the events related herein.  As the name change is irrelevant to the issues presented by PDIC's motion for summary judgment, the court will simply refer to the firm as "C&A" both pre- and post-name change to avoid unnecessary confusion.

3

Court timber trespass action on Yager's behalf, this time against
D.H. Hardwick & Sons.  That action also progressed to the summary
judgment stage, and in June 2010, the Superior Court granted
summary judgment to the defendant, holding that Yager's lawsuit
was barred by the state's three-year statute of limitations for
personal actions.  See N.H. Rev. Stat. Ann. § 508:4, I.  After
the Superior Court denied Yager's motion to reconsider, C&A
appealed both the grant of summary judgment and the denial of
reconsideration to the New Hampshire Supreme Court on his behalf.

In the meantime, Yager retained new counsel at Orr & Reno,
P.A., who contacted Clauson in January 2011 to notify him that
Yager had a possible legal malpractice claim against C&A if the
pending New Hampshire Supreme Court appeal proved unsuccessful.
The following month, Orr & Reno sent Clauson a confirmatory
letter, which stated, in pertinent part:

> Orr & Reno has been retained by James Yager to serve as
> counsel in regard to a possible malpractice claim
> against [C&A] arising out of [C&A's] representation of
> Mr. Yager in regard to timber trespass and common law
> trespass claims against Mighty Oaks Realty, LLC, and
> D.H. Hardwick & Sons, Inc.  Please provide a copy of
> this letter and the enclosure to your carrier. . . .

> While we have advised Mr. Yager that any claim against
> [C&A] would probably not be deemed to have arisen until
> 2009 or 2010, we are also aware that a court could
> possibly rule that the statute of limitations began to
> run in March, 2008.

> Accordingly, in order to ensure that Mr. Yager's right
> to file a lawsuit against [C&A] is not compromised, he

>      has instructed us either to file a lawsuit against
>      [C&A] before the end of February [2011], or to enter
>      into a tolling agreement.

The letter enclosed a proposed tolling agreement that would toll

the statute of limitations on Yager's possible malpractice claims

against C&A and Clauson one year, to allow time for the New

Hampshire Supreme Court to resolve Yager's pending appeal from

the Superior Court's orders granting summary judgment to D.H.

Hardwick & Sons.  Clauson and C&A executed the tolling agreement

on February 9, 2011, and returned it to Orr & Reno.

At the time, C&A carried professional liability insurance

through PDIC.  The policy then in force was a "claims-made and

reported" policy that provided coverage "for only those claims

that are first made against [C&A] and first reported to [PDIC] or

[its] authorized agents . . . DURING the policy period."  Despite

this--and notwithstanding Orr & Reno's request that Clauson send

a copy of its February 2011 letter to his insurer--C&A did not

provide the letter, or otherwise report the "possible malpractice

claim" to which it referred, to PDIC during the period of that

policy, which ended on September 29, 2011.  This, C&A and Clauson

say, is because they believed that (1) Yager's pending appeal to

the New Hampshire Supreme Court would be successful; and (2)

Yager had agreed to "postpone" any claim against them.

In September 2011, C&A applied for a new policy with PDIC.
Question 7 of the policy application asked, "In the last 12
months, has any firm member become aware of any incident, fact,
circumstance, act or omission that could result in a professional
liability claim against the firm or any former firm member?"  C&A
answered the question "No," and did not otherwise disclose Orr &
Reno's notice of "a possible malpractice claim," the tolling
agreement, or the facts and circumstances of its representation
of Yager.  Clauson executed the application on behalf of C&A.
PDIC approved the application and issued a "claims-made and
reported" policy to C&A for the policy period of September 29,
2011 (the date of expiration of C&A's then-current policy) to
September 29, 2012.

On September 15, 2011, only days after C&A had submitted its
application to PDIC, the New Hampshire Supreme Court issued an
unpublished order affirming the Superior Court's grant of summary
judgment to D.H. Hardwick & Sons.  C&A received a copy of the
order on September 19, 2011, and promptly forwarded it to Yager.
C&A did not, however, report the decision to PDIC.

On December 14, 2011, Orr & Reno wrote to Clauson on Yager's
behalf, enclosing a draft declaration for a writ of summons
alleging legal malpractice by both C&A and Clauson.  The draft
declaration alleged that C&A and Clauson had breached their duty

6

of care to Yager by failing to file the action against D.H.
Hardwick & Sons within the limitations period.  C&A forwarded the
letter and draft declaration to PDIC.

On February 10, 2012, Orr & Reno filed a legal malpractice
lawsuit on behalf of Yager against Clauson and C&A, who requested
that PDIC provide defense and indemnity coverage for the suit.
After completing a coverage investigation, PDIC declined to
defend or indemnify Clauson and C&A.  C&A responded by filing
this action, in New Hampshire Superior Court, seeking a
declaration that PDIC must provide coverage under the policy
issued in September 2011.  PDIC removed the action to this court
and filed a counterclaim against C&A and a third-party complaint
against Clauson, both seeking a declaration that it is not
required to provide such coverage.

The parties agreed that the relevant facts were undisputed,
that discovery was unnecessary, and that the most efficient way
to resolve this action was by summary judgment.  See Consent Mot.
to Modify Discovery Plan (document no. 16).  Pursuant to an
agreed-upon schedule, the parties submitted a joint statement of
stipulated facts, and PDIC filed a motion for summary judgment,
which Clauson and C&A have opposed.[3]

---

[3]The opposition filed by Clauson and C&A purports to be a
"cross-motion for summary judgment" as well.  The filing
therefore violates Local Rule 7.1(a)(1), which provides that

### III. __Analysis__

The issue presented for this court's resolution is a narrow one, as the parties agree on quite a lot.  They agree that the relevant policy is the policy running from September 29, 2011 to September 29, 2012.  They agree that as a "claims-made and reported" policy, that policy provides coverage only if a claim is both "made" and "reported" within the policy period.  See, e.g., Catholic Med. Ctr. v. Exec. Risk Indem., Inc., 151 N.H. 699, 703 (2005) (claims-made insurance policies "provide liability coverage for claims that are made against the insured and reported to the insurer during the policy period").  They agree that Yager's claim against Clauson and C&A was "reported" during the policy period.  They disagree, however, as to whether that claim was first "made" during the policy period.  It plainly

_____

"[o]bjections to pending motions and affirmative motions for relief shall not be combined in one filing."  Wholly apart from that, however, is the fact that this "cross-motion" is untimely-- as is the opposition itself.  On December 18, 2012, the Court granted the parties' joint motion to modify the discovery plan, which required cross-motions for summary judgment to be filed "on or before January 14, 2013" and oppositions "on or before February 4, 2013."  Consent Mot. to Modify Discovery Plan (document no. 16) at 2.  In direct contravention of this order, and despite their agreement to this schedule, Clauson and C&A did not file their combined opposition and cross-motion until February 13, 2013.  The cross-motion is therefore stricken as untimely, though the court will consider the arguments in the accompanying memorandum (such as they are) when ruling on PDIC's motion.

was not, and the policy therefore provides no coverage for the claim.

The interpretation of insurance policy language is a question of law for the court. Concord Gen. Mut. Ins. Co. v. Doe, 161 N.H. 73, 75 (2010). The court "interprets an insurance policy in the same manner as any other contract." Hudson v. Farm Family Mut. Ins. Co., 142 N.H. 144, 146 (1997). "Policy terms are construed objectively; where the terms are clear and unambiguous, [the court] accord[s] the language its natural and ordinary meaning," id., and "need not examine the parties' reasonable expectations of coverage," Colony Ins. Co. v. Dover Indoor Climbing Gym, 158 N.H. 628, 630 (2009). But, "[i]f the language of the policy is reasonably susceptible to more than one interpretation and one interpretation favors coverage, the policy will be construed in favor of the insured and against the insurer." Hudson, 142 N.H. at 146. Under New Hampshire law, PDIC, as the insurer, bears the burden of proving lack of coverage. N.H. Rev. Stat. Ann. § 491:22-a; see Colony Ins., 158 N.H. at 630; Hudson, 142 N.H. at 146.

Paragraph A.2 of the policy defines "when a claim is first made." In pertinent part, it provides:

9

A claim is first made against you[4] at the earlier of
the following:

> a) when you first receive oral or written notice
> that a claim has been made or will be made against
> you; or

> b) when you first receive information or have
> knowledge of specific circumstances involving a
> particular person or entity which could reasonably
> be expected to result in a claim; or

> c) when you first receive notice of a disciplinary
> proceeding.

Ins. Policy (document no. 17-10) at 2, ¶ A.2 (boldface omitted).

The policy further defines "claim" as:

> a) a demand or suit for money or services you receive,
> including any arbitration proceedings to which you are
> required to submit or to which you have submitted with
> our consent; or

> b) when you first receive oral or written information
> or have knowledge of specific circumstances involving a
> particular person or entity which could reasonably be
> expected to result in a demand or suit for money or
> services; or

> c) when you first receive oral or written notification
> of any disciplinary proceeding.

Id. at 4, ¶ D (boldface omitted).

For present purposes, the court can limit its analysis to

subsection b) of both definitions.  When those subsections are

read in conjunction, they indicate that a claim is made when the

insured first learns of "specific circumstances involving a

---

[4]"You" refers, of course, to the insured parties, including
Clauson and C&A.  See Ins. Policy (document no. 17-10) at 5-6.

10

particular person or entity which could reasonably be expected to result in a demand or suit for money or services."  When, then, did Clauson and C&A first learn of the "specific circumstances" involving Yager "which could reasonably be expected to result in a demand or suit for money or services"?

PDIC suggests this occurred no later than February 2011, when Orr & Reno wrote to Clauson notifying him that Yager had retained it "to serve as counsel in regard to a possible malpractice claim against [C&A] arising out of [its] representation of Mr. Yager in regard to timber trespass and common law trespass claims against Mighty Oaks Realty, LLC, and D.H. Hardwick & Sons, Inc." and instructed it "to file a lawsuit against [C&A] before the end of February [2011]" unless C&A signed a tolling agreement.  Given the express threat of a lawsuit in the letter, that is not an unreasonable suggestion.  Indeed, in light of that threat, and the accompanying request to "provide a copy of this letter . . . to your carrier," the conclusion that Clauson and C&A learned upon receiving the letter that their representation of Yager "could reasonably be expected to result in a demand or suit" seems inescapable.  Cf. Mut. Real Estate Holdings, LLC v. Houston Cas. Co., No. 10-cv-236, 2011 WL 3902774, *5 (D.N.H. Sept. 6, 2011) (McCafferty, Mag. J.)

11

(concluding that demand letter threatening litigation was claim made under policy).

Clauson and C&A nonetheless argue that Yager had not made a claim against them by sending the letter. The court has struggled to decipher exactly what the bases for this argument are, but with little success, as the discussion in the memorandum largely fails to engage the language of the insurance policy or coherently support Clauson's and C&A's position. As best the court can tell, it appears that Clauson and C&A are pressing four theories, none of which survives close scrutiny.

First, they appear to be arguing that Yager had made no "claim" against them because they subjectively believed they had not committed any malpractice, a belief fortified by the fact that Orr & Reno's February 2011 letter contained no "supporting factual allegations." Memo. in Supp. of Obj. to Summ. J. (document no. 20) at 4. But the definition of "claim" in the policy includes all circumstances that "could reasonably be expected to result in a demand or suit for money or services," and does not include any limitation that the demand or suit be meritorious. Indeed, the policy itself contemplates that some "claims" may not have any merit, providing that PDIC has "the exclusive right to investigate, defend, and/or settle any claim made under this policy, even if the allegations are groundless,

12

<u>false or fraudulent</u>."  Ins. Policy (document no. 17-10) at 3, ¶ B (boldface omitted; emphasis added).  It follows that Clauson's and C&A's belief that they had not committed malpractice, even if well-founded, does not exclude Yager's allegations of malpractice from the policy's definition of "claim."[5]

Second, they characterize Orr & Reno's February 2011 letter as "a reasonable request for an extension of time to investigate whether there might be a claim," rather than a notice of a potential "demand or suit for money or services."  Memo. in Supp. of Obj. to Summ. J. (document no. 20) at 6; <u>see also</u> <u>id.</u> at 7 (characterizing letter as "a request to extend the statute of limitations for the purpose of investigation of whether the client has a possible claim").  That is little more than wishful thinking.  On its face, the letter did not so much as hint that

---

[5]As another judge of this court has noted in similar circumstances, moreover, in light of PDIC's obligation "to defend all claims, not just those that are legitimate or valid, it would not be reasonable to read the Insuring Agreement as including a trigger of coverage that is not activated unless and until a third party makes a legitimate or valid claim against an insured."  <u>Mut. Real Estate</u>, 2011 WL 3902774 at *6.

It also bears noting that even if Clauson's and C&A's subjective belief as to the merit of the malpractice allegations against them <u>could</u> exclude those allegations from the definition of "claim," as they suggest, then no "claim" has been made against them yet, anyway, as they assert that they "continue[] to be of the opinion that objectively there was no malpractice and that no objective malpractice has ever been shown or even alleged."  Memo. in Supp. of Obj. to Summ. J. (document no. 20) at 8-9.  This exposes the absurdity of their argument.

Orr & Reno needed more "time to investigate whether there might
be a claim"; nor did the accompanying tolling agreement include
any language suggesting that Orr & Reno had not yet completed its
investigation of Yager's claim against Clauson and C&A.  Quite to
the contrary, it stated that Orr & Reno was prepared "to file a
lawsuit against [C&A] before the end of February."  It also made
clear that the purpose of the accompanying tolling agreement was
not to allow Orr & Reno additional time to investigate Yager's
claim, but to enable Clauson "to focus [his] energy on reversing
the trial court's summary judgment order" in the appeal then
pending before the New Hampshire Supreme Court.

Third, Clauson and C&A seek to analogize the present case to
the New Hampshire Supreme Court's decision in Shaheen, Cappiello,
Stein & Gordon, P.A. v. Home Insurance Co., 143 N.H. 35 (1998).
In that case, the plaintiff law firm had inadvertently omitted
from a proposed prenuptial agreement a critical provision that
unambiguously would have entitled its client to sole ownership of
the marital home upon divorce.  Id. at 36-37.  This omission
later came to light in divorce proceedings in which the firm
represented the same client.  Id. at 37.  Rather than report the
omission to its insurer, the firm reported it to the client, who
expressed confidence in the firm's abilities and requested that
it continue to represent her in the divorce.  Id.  The firm did

14

so, arguing to the marital master that the client was entitled to sole ownership of the home notwithstanding the omission.  Id. When that argument proved unsuccessful, the firm finally reported the omission to the carrier, which denied coverage for the ensuing malpractice suit, claiming the notice had been untimely. Id. at 37-38.  The New Hampshire Supreme Court, construing policy language that provided a claim was made, and a reporting requirement triggered, if the insured became "aware of any act or omission which could reasonably be expected to give rise to a claim," held that the insurer was required to provide coverage. Id. at 40-41.  The court reasoned that, in light of the unsettled nature of the law regarding prenuptial agreements and the client's expression of continued confidence in the firm after the omission was disclosed to her, the firm could have had no reasonable expectation of a claim against it (and no claim would be made under the policy) until the marital master's ruling.  Id.

Clauson and C&A seem to be arguing that they, like the firm in that case, could have had no reasonable expectation that Yager would bring a claim against them unless and until the New Hampshire Supreme Court affirmed the Superior Court's grant of summary judgment to D.H. Hardwick & Sons.  There are, however, several key facts distinguishing this case from Shaheen.  Here, Yager retained malpractice counsel, who then affirmatively put

15

Clauson and C&A on notice of his intention to bring suit against them in the February 2011 letter.  This is several degrees removed from the client's expression of continued confidence in the law firm in Shaheen, which tended to indicate that she had no intention of pursuing any malpractice claim at that time. Furthermore, at the time the omission from the prenuptial agreement in Shaheen became clear, and until the marital master ruled against the client, the firm still could harbor a reasonable belief that the client would prevail in the divorce case due to the unsettled state of the law.  By the time the February 2011 letter was sent in this case, in contrast, the Superior Court had already rejected Clauson's and C&A's arguments on behalf of Yager, which would tend to cast serious doubt on the likely success of those same arguments on appeal.[6]  Shaheen therefore does not help Clauson and C&A.

Fourth and finally, Clauson and C&A appear to argue in the alternative that even if Yager's claim was "made" prior to the policy period, PDIC should still be required to provide coverage because it has "suffered no prejudice."  Memo. in Supp. of Obj.

---

[6]Clauson's and C&A's reliance on Shaheen also suffers from a more fundamental flaw.  Even if, as they intimate, they could not have anticipated Yager's suit until the New Hampshire Supreme Court affirmed the grant of summary judgment to D.H. Hardwick & Sons, the Supreme Court did so on September 15, 2011, and Clauson and C&A learned of that result on September 19, 2011--before the relevant policy period.

to Summ. J. (document no. 20) at 12.  They assert that "[u]nless the insurer was prejudiced by the late notice [of a claim], the insured's failure to timely report the claim is not material breach of the policy that would exclude the insurer from performance." Id. (citing Dover Mills P'ship v. Commercial Union Ins. Co., 144 N.H. 336, 339 (1999)).  As PDIC points out, that argument is entirely inapposite.  "An insurer must show prejudice to deny coverage under an occurrence policy,"[7] but "[t]here is no requirement that an insurance company prove it was prejudiced due to lack of notice under a claims made policy" like that at issue in this case.  Bianco Prof'l Ass'n v. Home Ins. Co., 144 N.H. 288, 296 (1999).  And in any event, this is not a case where the insured gave the insurer "late notice" of a claim that was made within the policy period; rather, the insureds here are seeking coverage for a claim that was made before the policy even took effect.

Because Yager's claim was made before the inception of the relevant policy, and because the policy covers only claims that are made within the policy period, PDIC is not required to

_____

[7]In an occurrence policy, "coverage is triggered by the occurrence of a negligent act or omission during the coverage period."  Bates v. Vermont Mut. Ins. Co., 157 N.H. 391, 397 (2008).

provide coverage for that claim.  It is entitled to summary judgment in its favor.

**IV.  <u>Conclusion</u>**

For the foregoing reasons, PDIC's motion for summary judgment[8] is GRANTED.  Clauson and C&A's cross-motion for summary judgment[9] is STRICKEN as untimely.  The clerk shall enter judgment accordingly and close the case.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:  May 13, 2013

cc:  K. William Clauson, Esq.
     Mark L. Mallory, Esq.

---

[8]Document no. 18.

[9]Document no. 19.

18